UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANDALL T. ROYER, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL BUREAU OF PRISONS, )<br>)<br>  Defendant. )<br>_____) | Civil Action No. 10-1196 (HHK) |

## DEFENDANT'S MOTION TO DISMISS

Defendant, the Federal Bureau of Prisons ("BOP"), hereby moves, pursuant to Fed. R. Civ. P. 12(b)(1), and 12(b)(6) to dismiss this action. In support of this motion, the Court is respectfully referred to the Memorandum in Support of Defendant's Motion to Dismiss. A Proposed Order consistent with this Motion is attached hereto.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. BAR # 447889
United States Attorney
for the District of Columbia

RUDOLPH CONTRERAS, D.C. BAR # 434122
Chief, Civil Division

　　　　　/s/
CHARLOTTE A. ABEL, D.C. Bar # 388582
Assistant United States Attorney
United States Attorneys Office
555 4th St. NW
Washington, DC 20530
Tel: 202-307-2332
charlotte.abel@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANDALL T. ROYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 10-1196 (HHK) |
| | ) |
| FEDERAL BUREAU OF PRISONS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I.  INTRODUCTION

Plaintiff, a federal prisoner, was confined in the Communications Management Unit ("CMU") at the Federal Correctional Institution at Terre Haute, Indiana, from December 14, 2006, to October, 2009.  Complaint, ¶ 7.  He was then transferred to the Administrative Maximum Prison in Florence, Colorado (ADX Florence).  Complaint, ¶ 10.  *Id.*  Plaintiff seeks injunctive and declaratory relief for an alleged violation of 5 U.S.C. §553, the Administrative Procedure Act (APA).  Plaintiff contends that his right to "procedural protection of notice and comment rulemaking under the APA" was violated when he did not have enough time to comment on the proposed rule regarding the CMU's at the Bureau of Prisons.  Complaint, ¶¶ 1, 13.  He alleges that he received notice of the proposed rule from an outside source "only days before" the June 7, 2010 deadline for comment, which did not allow enough time for him to research and comment on the proposed regulation.  Complaint, ¶ 13.  Plaintiff seeks a declaratory judgment that BOP has violated his right to notice and comment rulemaking under the APA, and an injunction enjoining BOP from implementing the proposed CMU regulations until plaintiff and all BOP

inmates receive notice of the proposed regulations and an adequate opportunity and time to submit comments to the BOP.  Complaint, Part VI.

## II.  LEGAL STANDARDS

### A. Standard for Motion to Dismiss under Rule 12b(6) for Failure to State a Claim

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Ashcroft v. Iqbal*, –US–, 129 S. Ct. 1937 (2009).  A motion to dismiss under Rule 12(b)(6) requires that the court construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefits Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C. 1994).  While the court must construe the Complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994).  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C.Cir. 1997).  The court is limited to considering facts alleged in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F. 2d 1221, 1226 n. 6 (D.C.Cir. 1993).

### B. Standard for Motion to Dismiss under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be presented as a facial or factual challenge. *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009). A facial challenge attacks the factual allegations of the complaint that are contained on the face of the complaint. *Id.* at 192. A factual challenge is addressed to the underlying jurisdictional facts contained in the complaint. *Id.* When a defendant makes a facial challenge, the district court must accept the allegations contained in the complaint as true and consider the factual allegations in the light most favorable to the non-moving party. *Id.* at 192-93. With respect to a factual challenge, the district court may consider materials outside of the pleadings to determine whether it has subject matter jurisdiction over the claims. *Id.* "If the defendant challenges the facts purporting to establish subject matter jurisdiction, the court may hold an evidentiary hearing to determine if there are facts to support jurisdiction." *Id.* "The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1), [citation omitted] because '[t]he party who sues the United States bears the burden of pointing to … an unequivocal waiver of immunity,'

### III.  ARGUMENT

**A.  The equitable claims of Plaintiff are moot because he was released from the CMU before the complaint was filed.**

It is well established that claims for declaratory or injunctive relief become moot when the inmate is released or transferred to another facility, because the inmate no longer has "'a legally cognizable interest in the outcome.'" *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*quoting United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)); *see Qassim v. Bush*, 466 F.3d 1073, 1077 & n.4 (D.C. Cir. 2006) (citing D.C. Circuit cases that have "repeatedly held" that a prisoner's release or transfer moots any claims for equitable relief); *Scott v. Dist. of*

3

*Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998) ("Normally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison."); *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (same); *see also Powell v. Barrett*, No. 05-16734, 2007 WL 2386610, at n.27 (11th Cir. Aug. 23, 2007) (inmate's equitable claims must be dismissed after his release rendered them moot); *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (a claim for declaratory relief was moot where the plaintiff was "no longer a prisoner within the control of the" defendants and "the entry of a declaratory judgment in [the plaintiff]'s favor would . . . have no effect on the defendants' behavior towards him"); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for [declaratory and] injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions.").

Plaintiff contends that the BOP violated the APA by establishing the CMU's without providing him, and others like him, with an opportunity to comment. Complaint, ¶ 13. Even if the Court were to find a procedural defect under the APA with respect to the establishment of the CMU's, however, it could not redress any alleged injury to Plaintiff for the simple reason that he is no longer confined to the CMU. Any finding by the Court with respect to his APA claim would have no practical effect on Plaintiff. *See Renal Physicians Ass'n v. Dep't of Health and Human Serv.*, 422 F. Supp. 2d 7575, 85 (D.D.C. 2006)(to establish standing to challenge lack of notice and comment rulemaking under the APA, plaintiff "must still demonstrate that it is likely, not speculative, that the [C]ourt can redress the injury")(internal quotation marks and citations omitted), *aff'd Renal Physicians Ass'n v. Dep't of Health and Human Serv.*, 489 F.3d 1267, 1278-79 (D.C. Cir. 2007)(stating that, in a procedural-injury case involving an alleged failure to

provide notice and comment rulemaking under the APA, "the plaintiff must still show that the agency action was the cause of some redressable injury to the plaintiff"); *see also Spencer*, 523 U.S. at 7 (to avoid mootness, "plaintiff must have suffered or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision")(internal quotation marks omitted). As a result, Plaintiff's APA claim is moot.

> **B.     This case should be transferred to the district court for the District of Colorado based on the convenience of the parties.**

If the action is not dismissed, the court should transfer this action to the district court for the District of Colorado pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice.[1]  *Starnes v. McGuire*, 512 F.2d 918, 927-31 (D.C. Cir. 1974). The D.C. Circuit in *Starnes* set out a number of factors for a district court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of Columbia. Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C. *Id*. at 929-33.

The *Starnes* and the § 1404 (a) factors strongly support the appropriateness of transfer. Under 28 U.S.C. § 1391(e), which includes the venue provision covering lawsuits against agencies of the United States, a case "may ... be brought in any judicial district in which (1) a

---

[1] 28 U.S.C. § 1404 (a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred..., or (3) the plaintiff resides...." Plaintiff presumably contends that venue is appropriate in the District Court of Columbia because the defendant is headquartered in the District of Columbia. However, the events that Plaintiff complains of took place in Florence, Colorado, where Plaintiff is housed. Thus, venue is more appropriate in Colorado. At issue is whether Plaintiff is entitled to notice and comment rulemaking under the APA and whether Defendant wrongfully deprived Plaintiff of his alleged right to comment on BOP's proposed CMU regulations. Plaintiff appears to be challenging actions taken by prison officials in Colorado, witnessed by individuals located in Colorado, and allegedly causing injury to plaintiff in Colorado. Plaintiff's inmate records are located in Colorado. Various operational aspects of the federal prison in Florence, the institution supplements, and its procedures; and the identity of all those involved in the placement decisions are relevant to the merits of Plaintiff's claim.

Historically, the District of Columbia Circuit and this court have expressly rejected the notion that inmates incarcerated in other jurisdictions can challenge their conditions of confinement in this district simply because it is the location of the Federal Bureau of Prisons (BOP) Central Office. *Sanders v. Bennett*, 148 F. 2d 19 (D.C. Cir. 1945). The BOP has approximately 200,000 inmates in more than 100 institutions nationwide. Courts have correctly recognized the danger of giving all of those inmates the opportunity to bring their claims here. As the District of Columbia Circuit Court has stated, "Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). Indeed, the District of Columbia Circuit has recognized that "many, if

indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate." *Starnes v. McGuire*, 512 F.2d 918, 926 (D.C. Cir. 1974) (en banc). This is such a case.

### C. Determinations regarding designation are not subject to judicial review under the Administrative Procedure Act.

Under 5 U.S.C. §701(a), if the agency action under consideration (placement, classification, designation) is committed to agency discretion by law or a statute precludes judicial review, the agency action is unreviewable under the APA. Section § 701(a)(2) provides an exception to the general presumption of reviewability in cases in which the action is committed to agency discretion by law. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). This exception applies "when the statute granting agency discretion is so broad that it provides no law for courts to apply when reviewing agency action." *Haitian Refugee Center, Inc. v. Baker*, 953 F.2d 1498, 1507 (11th Cir.), *cert denied*, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992).

If a statute is written so broadly that there is no law to apply, a court's review of agency action would be essentially unguided. Then, by the language of the statute, the action is committed to the agency's discretion. "Only if a specific statute somehow limits the agency's discretion to act is there sufficient `law to apply' as to allow judicial review." *Greenwood Utilities Com'n. v. Hodel*, 764 F.2d 1459, 1464 (11th Cir. 1985).

Section 3625 of Title 18, which is titled "Inapplicability of the Administrative Procedure Act," provides that "[t]he provisions of section 554 and 555 and 701 through 706 of Title 5, United States Code, do not apply to the making of any determination, decision, or order under

this subchapter." The relevant "subchapter" is Subchapter C of Chapter 229, which includes sections 3621 through 3626. Title 18 U.S.C. §3621, provides the BOP with the custody of inmates sentenced to a term of imprisonment. Among the duties delegated to the BOP is the designation of a place of confinement. *See* 18 U.S.C. §3621(b). These enabling statutes are broadly written and direct the BOP to perform various functions with regard to both sentenced and pre-trial inmates. Since the statutes do not provide specific direction as to how these mandates are to be accomplished, the agency's discretion is not limited, the matters are left to agency discretion, and there is no law for the court to apply in a judicial review under the APA.

Title 18 U.S.C. § 3625 precludes the court from reviewing decisions regarding place of confinement under the APA. Section 3625 specifically states "[t]he provisions of sections 554 and 555 and 701 through 706 of Title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." *Richmond v. Scibana*, 387 F.3d 602, 605 (7th Cir. 2004)("A placement decision itself is not open to challenge under the APA"); *Fristoe v. Thompson*, 144 F.3d 627, 630-631 (10th Cir. 1998)(noting that § 3625 precludes review of the BOP's substantive decision in an individual case); *Landry v. Hawk-Sawyer*, 123 F.Supp.2d 17, 19 (D.D.C. 2000 (noting that judicial review of BOP substantive decision regarding a particular prisoner is precluded by 18 U.S.C. § 3625); *Fullenwiley v. Wiley*, 1999 WL 33504428 (N.D.N.Y. 1999)(federal courts lack jurisdiction over claim that BOP improperly classified prisoner).

The legislative history of section 3625 makes clear that this preclusion of judicial review is quite broad:

> Section 3625 makes clear that certain provisions of the Administrative Procedure Act do not apply to <u>any</u> determination, decision or order of the Bureau of Prisons.

>This result is in accordance with recent case law, and will assure that the Bureau of Prisons is able to make decisions concerning *the appropriate facility*, corrections program, and disciplinary measures for a particular prisoner without constant second guessing. The provision, of course, would not eliminate, and is not intended to eliminate, constitutional challenges by prisoners under the appropriate provisions of law. H.R. Rep. No. 98-1030, 98th Cong. 2d Sess. 149 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3332. (emphasis added).

Referring to this legislative history, one court has explained:

>While some might dispute Congress' use of the somewhat pejorative term "second guessing" in reference to the exercise of the federal judicial power, the message rings loud and clear. In light of the overwhelming evidence of congressional intent, this Court concludes that in enacting section 3625, Congress intended to "carve out" an area of decision making committed solely to agency discretion and not subject to judicial review. Lyle v. Sivley, 805 F.Supp. 755, 759 (D. Ariz. 1992).

Thus, absent a constitutional violation, this Court is bound by the express terms of § 3625, and may not review the BOP's decisions regarding placement under the APA. *Eaton v. United States*, 178 F.3d 902, 903 (7th Cir. 1999). In *Eaton*, the plaintiff challenged the terms under which the BOP had transferred him to a halfway house. The district court ruled against him on the merits. However, the Seventh Circuit held that the district court lacked jurisdiction to even consider the plaintiff's claim. *Id.* Citing § 3625, the Court stated: "The Bureau's decision to transfer Eaton to the halfway house was not judicially reviewable." *Id. See also National Coalition to Save Our Mall*, 269 F.3d 1092, 1094 (D.C. Cir. 2001) (affirming district court's conclusion that Act of Congress precluded judicial review of agency action regarding World War II Memorial). Consequently, § 3625 applies with full force and precludes judicial review of BOP's designation decision under the Administrative Procedure Act.

>**D.     Plaintiff has no right to be confined in any particular BOP facility because he has no protected liberty interest in being assigned to a particular institution or being assigned a particular security classification.**

9

Federal prisoners do not have a protected liberty interest in being assigned to a particular institution or security classification. A liberty interest in a prisoner may arise either under the Due Process Clause of the Constitution or it may arise from certain statutes or regulations. In *Sandin v. Connor*, 515 U.S. 472, 115 S.C. 2293 (1995), the Supreme Court explained that liberty interests created by prison regulations are limited to instances where such regulations impose atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484, 115 S.C. at 2300.

It is well settled that in general, an inmate does not have a liberty interest to a particular security classification. *Sandin*, 515 U.S. at 486; *Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Franklin v. D.C.*, 163 F.3d 625, 634-35 (D.C. Cir. 1998); *Neal v. D.C.*, 131 F.3d 172, 174-75 (D.C. Cir. 1997); *Phillips v. Hawk*, 1999 WL 325487, 2 (D.C. Cir. 1999).

Moreover, an inmate has no Constitutional right to be assigned to a particular institution or program. *Olim*, 461 U.S. at 238; *Meachum*, 427 U.S. at 215; *Pugliese v. Nelson*, 617 F.2d 916 (2d Cir. 1980); *Lott v. Arroyo*, 785 F.Supp. 508 (E.D.Pa. 1991) (Constitution does not confer on state inmate right to participate in pre-release program). In *Moody v. Daggett*, 429 U.S. 78 (1976), the Supreme Court addressed a challenge to the impact of a detainer on prison programming. The Court noted:

> We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In <u>Meachum v. Fano</u>, 417 U.S. 215 . . . (1976), for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less

10

agreeable prison, even where that transfer visited a "grievous loss" upon the inmate. The same is true of prisoner classification and eligibility of rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. §4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process. 429 U.S. at 88 n.9.

In *Pugliese*, the Second Circuit examined the statutes in effect in 1981 applicable to institutional placement and community programs, 18 U.S.C. §§ 4081 and 4082, and found that the statutes vested in the Attorney General "complete and absolute discretion with respect to the incarceration, classification, and segregation of lawfully convicted prisoners." 617 F.2d at 923. The authority of the Attorney General under these statutes has been delegated to the Federal Bureau of Prisons. 28 C.F.R. §0.96.

Under 18 U.S.C. §3621 (1987), the discretion to designate the place of incarceration has been retained and specifically conferred in the Bureau of Prisons. *United States v. Laughlin*, 933 F.2d 786 (9th Cir. 1991); *see Belasco v. Bureau of Prisons*, 1997 WL 529061 (D.C. Cir. 1997). The First Circuit has also addressed this issue and found that "'[d]ecisions to place a convicted defendant within a particular treatment program or a particular facility are decisions within the sole discretion of the Bureau of Prisons.'" *United States v. Melendez*, 279 F.3d 16, 18 (1st Cir. 2002), *quoting Thye v. United States*, 109 F.3d 127, 130 (2d Cir. 1997). The BOP may, at any time, direct the transfer of a prisoner from one penal or correctional facility to another. 18 U.S.C. 3621 (b).

E. **The relief sought may not be granted without meeting specific requirements of the Prison Litigation Reform Act, 18 U.S.C. §3626(a)(1).**

Plaintiff seeks an injunction to prevent the BOP from implementing the CMU regulation.

11

Complaint, Section VI, Relief. The statute governing prospective relief[2] in the Prison Litigation Reform Act (PLRA), codified at 18 U.S.C § 3626(a)(1), puts substantial limitations on the issuance of this type of relief. Specifically, the Act provides,

> prospective relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in *Porter v. Nussle*, 122 S.Ct. 983 (2002), as "any aspect of prison life") shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

The court must make particularized findings of the federal right violated and the needs-narrowness-intrusiveness requirements under the PLRA. This mandatory requirement must be more than mimicking the language of the statute, and is discussed in *Cason v. Seckinger*, 231 F.3d 777 (11th Cir. 2000); *see also, Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002).

The statute further states, "The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1). Any order that this court might issue with respect to the transfer of the Plaintiff to another institution directly implicates this portion of the PLRA, in that it will have an adverse impact on the BOP's authority to manage its inmate population and properly allocate the available resources, as well as the operation of the federal prison system. The court in *Thompson v. Gomez*, 993 F.Supp. 749, 754-5 (N.D.Cal.1997), *rev'd on other grounds* in *Gilmore v. People of the State of California*, 220 F.3d 987, 1005 (9th Cir. 2002) stated:

> The PLRA's prospective relief provisions unambiguously confine the power of federal courts to circumstances where prospective relief is necessary to correct specific violations

---

[2]The statute defines prospective relief as "all relief other than compensatory monetary damages." 18 U.S.C. §3626(g)(7).

of federal rights, and then to use only the least intrusive means necessary to correct such federal violations. For purposes of the PLRA's prospective relief provisions, 'federal rights' are limited to those rights created by federal law. The legislative reports on the bill reflect these Congressional intentions:

> By requiring courts to grant or approve relief constituting the least intrusive means by curing an actual violation of a federal right, the provision stops judges from imposing remedies intended to effect an overall modernization of local prison systems or provide an overall improvement in prison conditions. The provision limits remedies to those necessary to remedy the proven violation of federal rights. The dictates of the provision are not a departure from current jurisprudence concerning injunctive relief [which provides that] ... injunctive relief must be no broader than necessary to remedy the constitutional violation.' H.R.Rep. No. 21, 104th Cong., 1st Sess., pt. 2, p. 34 (1995) (citations and quotations omitted).

On appeal in the same case in the Ninth Circuit, in Gilmore, supra, at 1005, that court observed:

> As the Supreme Court long ago made clear in the school desegregation cases, although the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies ... it is important to remember that judicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults.... As with any equity case, the nature of the violation determines the scope of the remedy. Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15-16, 91 S.Ct. 1267, 28 L. Ed. 2d 554 (1971) (emphasis added) (approving remedies necessary to effectuate desegregation). Thus where a court seeks to correct a constitutional violation established in the course of litigation, the court's exercise of equitable discretion must heel close to the identified violation and respect 'the interests of state and local authorities in managing their own affairs, consistent with the Constitution.' Milliken v. Bradley, 433 U.S. 267, 281, 97 S. Ct. 2749, 53 L. Ed.2d 745 (1977) ("Milliken II ") (upholding imposition of remedial education program to effectuate desegregation decree).

Based on the forgoing, it would be inappropriate for the court to enjoin the BOP from enacting the regulations regarding the CMU inside the prison system.

13

## IV.  CONCLUSION

For the foregoing reasons, Defendant respectfully request that the Complaint be dismissed.  A proposed order is attached.

Respectfully submitted,

RONALD C. MACHEN Jr., D.C. BAR No. 447889
United States Attorney
for the District of Columbia

RUDOLPH CONTRERAS , D.C. BAR No. 434122
Chief, Civil Division

_____/s/_____
CHARLOTTE A. ABEL, D.C. Bar # 388582
Assistant United States Attorney
United States Attorneys Office
555 4th St. NW
Washington, DC 20530
Tel: 202-307-2332
charlotte.abel@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Defendant's Motion to Dismiss was mailed on this 10th day of January, 2011, postage pre-paid, to Plaintiff *pro se* at the following address:

RANDALL T. ROYER
R46812-083
Florence Admax
U.S. Penitentiary
PO Box 8500
Florence, CO 81226

                        /s/
                        CHARLOTTE A. ABEL
                        Assistant United States Attorney