**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RANDALL TODD ROYER,

                              Plaintiff,

        v.                                                    Civil Action No. 10-1196 (HHK)

FEDERAL BUREAU OF PRISONS,

                              Defendant.

**MEMORANDUM OPINION**

        This matter is before the Court on defendant's motion to dismiss and plaintiff's motion to

amend the complaint [#15].  For the reasons discussed below, the Court will deny the former and

grant the latter.[1]

**I.  BACKGROUND**

        Plaintiff, who also is known as Ismail Royer, is a federal inmate in the custody of the

Federal Bureau of Prisons ("BOP") serving a 240-month term of imprisonment.  *Royer v. Fed.*

*Bureau of Prisons*, No. 1:10-cv-0146, 2010 WL 4827727, at *1 (E.D. Va. Nov. 19, 2010).  "On

January 16, 2004, [he] pled guilty . . . to one count of aiding and abetting the use and discharge

of a firearm during and in relation to a crime of violence (conspiracy to violate the Neutrality

Act), in violation of 18 U.S.C. §§ 924(c)(2) & 3238, and one count of aiding and abetting the

carrying of an explosive during the commission of a felony . . . in violation of 18 U.S.C. §§

---

[1]        In addition, the Court will deny plaintiff's motions to strike [#17] and to strike
portions of defendant's motion to dismiss [#20], and will grant plaintiff's unopposed motions for
leave to file an amended complaint [#27] and for leave to file a surreply [#28].

844(h)(2) & 3238."[2]  *Id.*  Based upon these convictions, the BOP classifies plaintiff "an offender

with a history of, or nexus to, international terrorism and has accordingly designated him as a

'terrorist inmate.'"  *Royer*, 2010 WL 4827727, at *1.

According to plaintiff, in April 2006, "the BOP . . . published in the Federal Register a

proposed regulation titled 'Limited Communication for Terrorist Inmates,'" pursuant to which

the BOP would classify certain inmates as "terrorist inmates" and impose "severe restrictions on

the conditions of [their] confinement," such as "limits on . . . telephone use, visitation, and use of

the mail."  Compl. at 9.[3]  After receiving "strong objections from a wide range of civil liberties

organizations, . . . the BOP abandoned the required notice and comment procedure as to the

proposed regulation."  *Id.*  Instead, the BOP "quietly put into practice policies and procedures

substantially similar to the proposed regulations, classifying certain prisoners as 'terrorist

---

[2]      Among other offenses, plaintiff was charged with commencing an expedition
against a friendly nation, *see United States v. Khan*, 309 F. Supp. 2d 789, 795 (E.D. Va. 2004), a
violation of the Neutrality Act which provides:

> Whoever, within the United States, knowingly begins or sets on foot or provides or
> prepares a means for or furnishes the money for, or takes part in, any military or
> naval expedition or enterprise to be carried on from thence against the territory or
> dominion of any foreign prince or state, or of any colony, district, or people with
> whom the United States is at peace, shall be fined under this title or imprisoned not
> more than three years, or both.

18 U.S.C. § 960.  Plaintiff and his co-defendants were said to be "involve[d] in activities . . .
which . . . constituted preparation for violent jihad overseas against nations with whom the
United States was at peace and providing material support to terrorist organizations."  *Khan*, 309
F. Supp. 2d at 796.

[3]      Plaintiff submits his complaint on a pre-printed form, "Complaint for Violation of
Civil Rights," and attaches to it a six-page handwritten "Statement of Claim," the relevant
portions of which he designates as a continuation of section V. of the pre-printed form.  The
pages numbers cited in this Memorandum Opinion are those generated by the Court's electronic
docket.

inmates' and imposing tight restrictions on their ability to communicate and on other conditions

of their confinement." *Id.*  As a result of these policies, plaintiff allegedly was transferred from

the general population of a medium security facility, *id.*, and placed in a Communications

Management Unit ("CMU") at the Federal Correctional Institution in Terre Haute, Indiana ("FCI

Terre Haute"), from December 2006 through October 2009. *Id.* at 10.  Because of plaintiff's

"involvement in an altercation with another inmate," *id.*, and the disciplinary proceedings which

followed, the BOP caused his transfer "to its 'supermax,' the ADX in Florence, Colorado."[4] *Id*l.

at 10.  According to plaintiff, if he "had not been confined by the BOP in the CMU at [FCI]

Terre Haute under the policies it created . . ., he would not have been transferred to ADX . . . .

Rather, at most, he would have been transferred to a Low or Medium Security facility

commensurate with his security level." *Id.* at 10-11.

    The BOP proposed the establishment of CMUs by regulation, *see* Communication

Management Units, 75 Fed. Reg. 17324 (Apr. 6, 2010).  Noting the existence of two CMUS then

in operation at the Federal Correctional Complex in Terre Haute and the United States

Penitentiary in Marion, Illinois, "this proposed rule codifie[d] and describe[d] the [BOP's]

procedures for designating inmates to, and limiting communication within, its [CMUs]." *Id.*  In

relevant part, the notice of proposed regulation stated:

> The purpose of the CMUs is to provide for an inmate housing unit
> environment that enables staff to more effectively monitor
> communication between CMU inmates and persons in the
> community.  The CMU concept allows the [BOP] to monitor inmates
> for whom such monitoring and communication limits are necessary,

---

[4]    This altercation is the subject of a habeas corpus action filed by plaintiff in the United States District Court for the District of Colorado.  *See* Response to Order to Show Cause, *Royer v. Davis*, No. 10-3153 (D. Colo. filed Mar. 25, 2011).

> whether due to a terrorist link or otherwise, such as inmates who have
> previously committed an infraction related to mail tampering from
> within an institution, or inmates who may be attempting to
> communicate with past or potential victims.

*Id.* at 17324-25.  The CMU was described as "a general population unit where inmates will ordinarily reside, eat, and participate in educational, recreational, religious, visiting, unit management, and work programming, . . . [and] may contain a range of cells dedicated to segregated housing of inmates in administrative detention or disciplinary segregation status."  *Id.* at 17325.  The BOP deemed the CMUs necessary in order "to ensure the safety, security, and orderly operation of correctional facilities, and protect the public."  *Id.* at 17324.  The notice set June 7, 2010, as the deadline for submission of public comments.  *Id.*

Plaintiff alleges that inmates at ADX "have no access to the Federal Register or any proposed federal regulations other than the closed circuit television system" at that facility, and notices posted in the Education Department, law library, or housing units.  Compl. at 11.  However, "[i]nmates in ADX's special housing unit or under disciplinary sanctions do not have television in their rooms and are not able to view the notices of . . . proposed regulations."  *Id.*  He explains that, when he arrived at ADX in March 2010, he was held in its special housing unit for approximately two weeks, during which time he had no television, *id.* at 12, and that he learned of the proposed regulation "only days before the June 7, 2010 deadline . . . from a party outside the prison."  *Id.* at 13.  For these reasons, he alleges, he did not have time to research and draft comments for submission to the BOP before the June 7, 2010, deadline.  *Id.*

Plaintiff brings this action under the Administrative Procedure Act ("APA"), which requires that "[g]eneral notice of proposed rule making . . . be published in the Federal Register," 5 U.S.C. § 553(b), in order that "the agency . . . give interested persons an opportunity to

4

participate in the rule making through submission of written data, views, or arguments," 5 U.S.C.

§ 553(c).  He demands a declaratory judgment "that the [BOP] has violated 5 U.S.C. § 553 . . .

by depriving plaintiff of his right to the procedural protection of notice and comment rule

making under the APA."  Compl. at 5.  In addition, plaintiff demands injunctive relief to prevent

the "BOP from implementing the proposed CMU regulations or taking any further action on

those regulations until plaintiff and all BOP inmates receive notice . . . and an adequate

opportunity . . . to submit comments to the BOP."  *Id.*

## II.  DISCUSSION

The parties are in agreement that the only issues initially presented in this case are

"whether [p]laintiff is entitled to notice and comment rulemaking under the APA and whether

[the BOP] wrongfully deprived [p]laintiff of his alleged right to comment on [the] BOP's

proposed CMU regulations."  Def.'s Mem. at 6; Mem. in Supp. of Pl.'s Mot. to Strike Portions

of Def.'s Mot. to Dismiss [#20] at 3.  The BOP moves to dismiss under Fed. R. Civ. P. 12(b)(1)

for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim upon which relief can be granted.  In the alternative, the BOP moves to transfer this action

under 28 U.S.C. § 1404(a) to the United States District Court for the District of Colorado.

### A.  *Subject Matter Jurisdiction*

"Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U.S. 375, 377 (1994), and the United States Constitution "limits the jurisdiction of

federal courts to "Cases" and "Controversies," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559

(1992); *see* U.S. Const., art. III § 2, cl.1.  "Three inter-related judicial doctrines – standing,

mootness, and ripeness – ensure that federal courts assert jurisdiction only over 'Cases' and

'Controversies.'"  *Worth v. Jackson*, 451 F. 3d 854, 855 (D.C. Cir. 2006) (quoting U.S. Const.

art. III, § 2).

The plaintiff bears the burden of establishing by a preponderance of the evidence that the

court has subject matter jurisdiction, *Defenders of Wildlife*, 504 U.S. at 561, and to establish

standing to bring a claim, he must address three matters:

> First, the plaintiff must have suffered an injury in fact – an invasion
> of a legally protected interest which is (a) concrete and particularized,
> and (b) actual or imminent, not conjectural or hypothetical.  Second,
> there must be a causal connection between the injury and the conduct
> complained of – the injury has to be fairly traceable to the challenged
> action of the defendant, and not the result of the independent action
> of some third party not before the court.  Third, it must be likely, as
> opposed to merely speculative, that the injury will be redressed by a
> favorable decision.

*Id*. at 560-61 (internal punctuation and citations omitted).  For purposes of examining whether a

plaintiff has standing, the Court accepts the factual allegations of the complaint as true, *see*

*Sierra Club v. Envtl. Prot. Agency*, 292 F. 3d 895, 898-99 (D.C. Cir. 2002), and such allegations

are liberally construed in the plaintiff's favor, *see Walker v. Jones*, 733 F. 2d 923, 926 (D.C. Cir.

1984).  "[T]he standing inquiry remains focused on whether the [plaintiff] had the requisite stake

in the outcome *when the suit was filed*."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734

(2008) (emphasis added).

The plaintiff's claim must remain viable not only at the time the complaint was filed but

also as the litigation proceeds.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Newdow v. Roberts*,

603 F.3d 1002, 1008 (D.C. Cir. 2010).  Mootness is determined at the time a matter is reviewed.

*See, e.g., Bldg. & Const. Trades Dep't, AFL-CIO v. Solis*, 600 F. Supp. 2d 25, 33 (D.D.C. 2009).

A claim becomes moot if "there is no reasonable expectation that the alleged violation will recur,

and interim relief or events have completely and irrevocably eradicated the effects of the alleged

violation." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (internal citations and

quotation marks omitted); *see also Maydak v. United States*, 630 F. 3d 166, 176 (D.C. Cir. 2010)

(concluding that federal inmates ceased to have standing to present their claims pertaining to the

BOP's alleged improper use of Trust Fund monies after their release from BOP custody, and

their claims then were moot); *Aref v. Holder,* __ F. Supp. 2d __, __,  2011 WL 1195813, at *9

(D.D.C. Mar. 30, 2011) (dismissing as moot claims of an inmate whose release to a halfway

house, and consequently the cessation of his designation to a CMU, preceded the filing of the

lawsuit).

The BOP moves to dismiss on the ground that plaintiff "is no longer confined to the

CMU," Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 5, and therefore his APA

claim is moot.  *Id.* at 6.  Plaintiff counters that the BOP has "conflated the concepts of mootness

and standing," and he interprets its argument as one asserting that his "claim is not justiciable

because plaintiff's transfer out of the CMU in 2009 destroys his standing to challenge the

agency's CMU rulemaking now."  Pl.'s Opp'n at 6.  He proceeds to argue that he retains

standing although he "is not at this moment actually confined in a CMU."  *Id.* at 12.

First, plaintiff argues that his injury is "concrete and particularized," Pl.'s Opp'n at 7,

because, as a federal inmate in BOP custody who is classified as a "terrorist," the proposed rule

"by its terms applies directly to [him]."  *Id.* at 11-12.  He maintains that he faces imminent injury

because his "terrorist inmate . . . classification . . . persists," and that he "remains eligible for

CMU confinement and faces a substantial likelihood of future transfer back to a CMU."  *Id.*

Further, he claims to "suffer[] actual injury at this very moment due to the violation of his right

7

to participate in the CMU rulemaking, in the form of his 'terrorist inmate' classification and supermax confinement." *Id.* at 15.  The second element of standing, he states, "deserves little comment, as it is undisputed that the alleged injury flows from the BOP's policies."  Pl.'s Opp'n at 16.  Lastly, plaintiff contends that his injury will be addressed by a favorable decision, even if "the opportunity to participate in BOP rulemaking will [not] certainly result in the removal of the restrictions he is subject to, or the moderation of their severity."  *Id.* at 17.

The parties appear to lose sight of the relevant injury: that caused by the BOP's violation of 5 U.S.C. § 553 depriving plaintiff of a meaningful opportunity to prepare and submit comments on the proposed CMU regulation before the June 7, 2010, deadline.  This injury is not dependent upon plaintiff's confinement in a CMU.  Accepting plaintiff's factual allegations as true, plaintiff establishes that, as a "terrorist inmate," he has been housed in and may again be transferred to a CMU.  His release from the CMU at FCI Terre Haute prior to the filing of his complaint and prior to review of defendant's dispositive motion neither deprives plaintiff of standing nor renders his APA claim moot.

Insofar as plaintiff alleges current injury in the form of restricted communications, such restrictions come about because of his designation to ADX and are in no way dependent upon the existence of CMUs within the BOP or any applicable policies or regulations regarding their creation and management.  It cannot be said that restrictions imposed by virtue of his designation to ADX are related to or caused by the BOP's alleged failure to notify him of the proposed CMU rule.

The Court will deny defendant's motion to dismiss for lack of subject matter jurisdiction on mootness grounds.

### B.  Amendment of the Complaint

Plaintiff's unopposed motion for leave to file an amended complaint will be granted, and the Court will not address the alternative bases for dismissal set forth in defendant's dispositive motion.  Its motion to dismiss or transfer will be denied without prejudice.

An Order accompanies this Memorandum Opinion.


HENRY H. KENNEDY, JR.
United States District Judge

DATE:  September 9, 2011