## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RANDELL T. ROYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 10-1196 (HHK)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO DISMISS, TRANSFER OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, the Federal Bureau of Prisons ("BOP"), hereby moves, pursuant to Fed. R.

Civ. P. 12(b)(3) and (b)(6) to dismiss this action, or, in the alternative, for summary judgment.

In support of this motion, the Court is respectfully referred to the Memorandum in Support of

Defendant's Motion to Dismiss, Transfer or For Summary Judgment and its Statement of

Material Facts Not in Genuine Dispute.  A Proposed Order consistent with this Motion is

attached hereto.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. BAR # 447889
United States Attorney
for the District of Columbia

RUDOLPH CONTRERAS, D.C. BAR # 434122
Chief, Civil Division

_____/s/_____
LAURIE WEINSTEIN, D.C. Bar #389511
Assistant United States Attorney
United States Attorneys Office
555 4th St. NW
Washington, DC 20530

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RANDELL T. ROYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 10-1196 (HHK)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS,
TRANSFER OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Defendant, the Federal Bureau of Prisons (BOP), previously moved to dismiss this action while Plaintiff, Randell T. Royer, moved to amend his Complaint.  By Order and Opinion of September 9, 2011, this Court denied Defendant's Motion to Dismiss and granted Plaintiff's Motion to Amend the Complaint.  In that Opinion, the Court found that Plaintiff's claim that the BOP violated 5 U.S.C. § 553 was not made moot by the Plaintiff's assignment outside of a Communications Management Unit (CMU).   The Court described as the Plaintiff's injury that BOP  "depriv[ed] plaintiff of a meaningful opportunity to prepare and submit comments on the proposed CMU regulation before the June 7, 2010, deadline."  Op. at 8.   The Court also denied Defendant's motion to dismiss or to transfer without prejudice, while allowing the Plaintiff to file his Amended Complaint.   In addressing the Amended Complaint, Defendant renews its motion to dismiss under 12 (b)(6) and its motion to transfer and further moves for summary judgment.

Plaintiff, a federal prisoner, was confined in the Communications Management Unit ("CMU") at the Federal Correctional Institute at Terre Haute, Indiana, from December 14, 2006,

to October, 2009.  Original Complaint, ¶ 7    He was then transferred to the Administrative

Maximum Prison in Florence, Colorado (ADX Florence).  Id., at ¶ 10.  He has not been in a

CMU or other restricted housing since March 2010.  *See* Mack Decl. at ¶ 3 (Ex. A).

The subject of Plaintiff's amended complaint remains the adoption by BOP of policies

related to its Communication Management Units (CMUs).  Plaintiff seeks injunctive and

declaratory relief for alleged violations of 5 U.S.C. §553, Administrative Procedure Act (APA).

In his first Count, Plaintiff argues that BOP should have adopted its "terrorist inmate policy"

through notice and comment rulemaking, Amended Complaint at 12, and in his second Count,

contends that his rights were violated under the notice and comment sections of the APA when

he did not have enough time to comment on the proposed rule regarding the CMU's at the BOP.

*Id.*, at 13.  Plaintiff does not specifically allege in his amended complaint when he received

notice of the proposed regulation.  Instead, he alleges that the proposed regulation "was not

posted for inmate review in the ADX until after the comment period had expired," Amended

Complaint at ¶ 17, and, based upon a conversation with another inmate, blamed that failure on

the BOP's Office of General Counsel.  *Id.*  He previously alleged that he received notice of the

proposed rule from an outside source on June 1, 2010, which did not allow him enough time to

research and comment on the proposed regulations by the closing date of June 7, 2010.  Original

Complaint, at ¶ 13.

With regard to the first Count, BOP has in fact engaged in notice and comment rule-

making.  *See* Exhibit B, Fed. Reg. Vol. 75, No. 65, 17324 (April 6, 2010) (Notice of Proposed

Rule- Communication Management Units).  Therefore, this Count should be dismissed for

failure to state a claim upon which relief can be granted.

Count II should be dismissed for failure to state a claim upon which relief can be granted because by Plaintiff's own admission, he did in fact have an opportunity to comment. In the alternative, summary judgment should be granted because notice was available to Plaintiff, as described in the declaration of Roxana Mack, Exhibit A, and nothing in the APA or other law requires the BOP to individually notify potentially interested parties once they have published the proposed rule. Furthermore, BOP did make the proposed rule available to Plaintiff had he availed himself of the multiple opportunities to observe it. Finally, because this issue directly involves only actions occurring in the state of Colorado, at the Florence ADX, this case should transferred to that District.

## II.  LEGAL STANDARDS

### A.  Standard for Motion to Dismiss under Rule 12b(6) for Failure to State a Claim

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Ashcroft v. Iqbal*, –US–, 129 S. Ct. 1937 (2009). A motion to dismiss under Rule 12(b)(6) requires that the court construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefits Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C. 1994). While the court must construe the Complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994). Moreover,

the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C.Cir. 1997).  The court is limited to considering facts alleged in the complaint, matters of which the court may take judicial notice, and matters of public record. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F. 2d 1221, 1226 n. 6 (D.C.Cir. 1993).

### B.  Standard for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In determining whether there exists a genuine issue of material fact, the Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.  If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50.  Indeed, in order to withstand summary judgment, the non-moving party may not rest upon mere allegations or denials.  Id. at 248.  The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact.  Id. at 247-48.  There is no genuine issue of material fact if the relevant evidence of record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the party opposing summary judgment.  Id. at 248.  That is, if the submitted evidence is of such a character that it would not permit a reasonable fact finder to find in favor of the non-moving party, summary

4

judgment is appropriate.  Id. at 251.

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Rather, when the movant files a properly-supported summary judgment motion, the burden shifts to the nonmoving party to show "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions,""or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  *See also Brown v. Small*, 2006 WL 1888562 at *4 (D.D.C. July 7, 2006) (RBW) (same).

## III.  ARGUMENT

### A.  A Pro Se Inmate May Not Argue on Behalf of All Inmates

In his Amended Complaint, Plaintiff deletes all references to his individual failure of notice and instead argues that no inmates received timely notice of the proposed rule.  Amended Complaint, at ¶ 17.  It is improper for a Court to permit a pro se inmate to risk the rights of others and represent a proposed class.  *Oxendine v. Williams*, 509 F. 2d 1405, 1407 (4th Cir. 1975); *Jeffery v. Malcolm*, 353 F. Supp. 395, 396-97 (S.D.N.Y. 1973); *Turoff v. May Co.*, 531 F. 2d 1357 (6th Cir. 1976).  Indeed, this Court has previously denied Plaintiff's motion for class certification on those grounds.  See Dkt. 24.  Therefore, the Amended Complaint, which only purports to argue on behalf of all inmates and not solely the Plaintiff, should be dismissed.

### B.  The APA Did Not Require The Bureau To Provide Notice And Comment Rulemaking Before Creating a "Terrorist Inmate Policy"

Plaintiff claims that BOP has created a "terrorist inmate policy" in violation of the APA,

without specifically identifying of what that policy consists aside from the provisions of the

CMUs (which, as noted above, are currently the subject of notice and comment rulemaking).

Under the APA, an agency intending to engage in rulemaking must first publish a notice of the

rule in the Federal Register and provide interested persons with the opportunity to comment. 5

U.S.C. § 553(b). This requirement only applies to agency "rules," which the APA defines as "the

whole or a part of an agency statement of general or particular applicability and future effect

designed to implement, interpret, or prescribe law or policy or describing the organization,

procedure, or practice requirements of an agency." *Id.* § 551(4).  The APA specifically exempts

"interpretive rules, general statements of policy, or rules of agency organization, procedure, or

practice" from notice and comment requirements. *Id.* § 553(b)(3)(A).

Plaintiff's alleged "terrorist policy" has not been shown to be a "rule" within the meaning

of the APA.  Rather, without clarity on exactly what is contained in the "terrorist inmate policy"

that Plaintiff attacks, that "policy" is more akin to interpretive rules or agency policy statements

that the Bureau uses to advise the public and its staff of the manner in which it will exercise its

discretionary statutory and regulatory authority. *Cf. Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP

Program Statements are "akin to an interpretive rule that do[es] not require notice and comment

[and] is still entitled to some deference) (internal quotation marks omitted).  This conclusion is

confirmed by controlling D.C. Circuit precedent.  In determining whether a rule is interpretive,

and thus not subject to the APA's notice and comment rulemaking requirements, the D.C. Circuit

directs a court to consider:(1) Whether in the absence of the rule there would not be an adequate

legislative basis for enforcement action or other agency action to confer benefits or ensure the

performance of duties, (2) whether the agency has published the rule in the Code of Federal

Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule.  *American Mining Cong. v. Mine Safety and Health Administration*, 995 F.2d 1106, 1112 (D.C. Cir. 1993)). "If the answer to any of these questions is affirmative, we have a legislative, not an interpretive rule." *Id.* This Court has applied the *American Mining* test in holding that a BOP Program Statement is an interpretive rule that does not require notice and comment procedures.  *See Kotz* v. *Lappin*, 515 F. Supp. 2d 143, 151 (D.D.C. 2007) (Urbina, J.). Applying this test here demonstrates that the Plaintiff's alleged "terrorist inmate policy" likewise does not trigger the APA's requirement for notice and comment rulemaking.

There is clear legislative authority for the creation of policies related to inmates designated in various ways, including as terrorist inmates.  *American Mining*, 995 F.2d at 1112. "[T]he control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General . . . ." 18 U.S.C. § 4001(b)(1).  Under the direction of the Attorney General, the BOP is granted broad authority and discretion for the management and regulation of all federal penal and correctional institutions. *Id.* § 4042(a)(1).  Prisoners are committed to the custody of the Bureau, and the agency is expressly authorized to designate the inmate's placement of confinement. *Id.* § 3621(a) and (b). In addition, the Bureau is charged with determining the proper security classification for federal prisoners based on the nature of their offenses. *Id.* § 4081. In addition to its statutory authority to create CMUs, the Bureau also has ample regulatory authority to implement the restrictions on the communications employed in the CMUs. *See*, *e.g.,* 28 C.F.R. § 540.12(a) (authorizing wardens to establish and exercise control to protect individuals, security, discipline, and good order of institution); *id.* § 540.14(b)-(c)

7

(authorizing inspection of mail); *id.* § 540.102 (authorizing monitoring of telephone communication); *id.* § 540.40 (authorizing restrictions and limits on inmate visiting). Thus, the agency did not need to issue a legislative rule to establish the policies governing "terrorist inmates" because it already had the legislative and regulatory authority to do so.

The alleged "terrorist inmate policy" also meets the additional test of a non-legislative rule because they were not published in the Federal Register (unlike the proposed CMU regulations). *American Mining*, 995 F.2d at 1112. Plaintiff also has failed to show that BOP "has explicitly invoked its general legislative authority." *American Mining*, 995 F.2d at 1112. Nor does the alleged "terrorist inmate policy" effectively amend[] a prior legislative rule." *American Mining Congress*, 995 F.2d at 1112. In implementing whatever Plaintiff describes as the "terrorist inmate policy," the agency did not amend any of its legislative rules, as the matters of which Plaintiff complains are within the boundaries of preexisting regulations regarding visiting and telephone use. "Consistent with available resources, such as space limitations and staff availability, and with concerns of institution security, the Warden may limit the visiting period." 28 C.F.R. § 540.42(b).

Because Plaintiff has not successfully described the "terrorist inmate policy" as something subject to 5 U.S.C. § 553(b)(3)(A), Plaintiff has failed to state a claim that notice and comment rulemaking was required. It was not.

### C.   Defendant Is Entitled to Summary Judgment Because Plaintiff Did Have an Opportunity to Comment on the Proposed Rule.

Plaintiff's amended complaint is based on the premise that BOP failed to post notice of the Proposed Rule regarding CMUs in ADX Florence in time for inmates to review and comment on those rules. Plaintiff does not allege that he performed the actions necessary for any

inmate wishing to review proposed rules and found that the proposed rule was not in fact

available.  He does not allege that he viewed the inmate bulletin and found no notice, he does not

allege he took advantage of opportunities to use the law libraries to review the "New Rules

Posting List" which could be found there, and he does not allege that he was in some restricted

housing that prevented him from accessing the myriad of sources in which such notices would be

posted.

     Contrary to Plaintiff's failure to allege he took actions required of an individual

interested in commenting on proposed rules, BOP can show that in fact, the Notice was timely

provided to any inmate in Florence ADX who followed the known process for discovering

proposed rules.  *See* Decl of Roxana Mack, Exhibit A.

     In that Declaration, Ms. Mack explains that BOP published in the Federal Register on

April 6, 2010, a proposed rule governing Communication Management Units (CMUs).  *Id*. at 6

From March 29, 2010, until the present, Plaintiff has been housed in a general population unit or

Step-Down Unit at ADX Florence.  Id. at ¶ 3.  See also, Original Complaint at ¶ 10 (page 12 of

ECF assigned page numbers).  Inmates at ADX Florence, with some exceptions which do not

apply to Plaintiff, are housed in cells with television units.  Mack Decl. at ¶ 4.  *See also*, Original

Complaint at ¶10.  All new inmates are required to watch the entire Admission and Orientation

Program broadcast on the Institutional Channel, which includes information on obtaining

information from various ADX departments.  Mack Decl. at  ¶ 4.  Moreover, all new inmates are

provided a copy of the Education Handbook upon arrival that informs inmates that they may

view all bulletins on Channel 70 from their individual television sets in their cells.  *Id*. at ¶ 5.  On

April 6, 2010, the ADX posted the "New Rules Posting List" on the inmate bulletin (accessible

via an inmate's television in his cell) which included the proposed regulations regarding the CMU as contained in the Federal Register. *Id.* at ¶ 6. The proposed CMU has been listed as part of the "New Rules Posting List" since April 2010 on the ADX Florence inmate bulletin. *Id.* Finally, it should be understood that inmates may obtain copies of the proposed regulations by the following procedures: 1) the New Rules Posting List is posted on the ADX Florence inmate bulletin board; 2) an inmate may send a written request to the Education Department requesting review of proposed regulations; and 3) the requested regulation is sent through institutional mail to the inmate. *Id*. at ¶ 7.  Plaintiff does not indicate in his Amended Complaint that he attempted to obtain the requisite information in any way.  Plaintiff admits in his Original Complaint that he was in regular housing by the end of March 2010 and had a television. Original Complaint at ¶10.  He does not allege he was unable to access that or visit the prison library.  Therefore, absent even his allegation that he looked in the appropriate and available places, summary judgment should be granted to the Defendant.

### D.    Plaintiff has Failed to Allege the Content of His Proposed Comments; Therefore, Any Injury He May Suffer Is Speculative

Plaintiff has had over a year since the filing of this suit to articulate the comments he wishes to make on the proposed regulation.  Other than the generic issues of visitation, media access and communication privileges raised in his Amended Complaint, at  ¶¶ 18-22, Plaintiff has not made direct comments on the proposed regulation.  Without setting forth the comments he intended to make, Plaintiff cannot show any injury.  In *Air Transport Association of America v. Civil Aeronautics Board*, 732 F. 2d 219 (D.C. Cir. 1984), the Circuit found that the Civil Aeronautics notice complied with the APA after plaintiff there argued that it had not had sufficient time to review agency records prior to the expiration of the comment period.  Because

the plaintiff did "not explain what it would have said had it been given earlier access to the staff studies," the Circuit found that "any error generally would be found harmless." *Id*, at 224, n.. 7, citing 5 U.S.C. § 706 and *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F. 2d 506, 540-41 (D.C. Cir. 1983).   In *Small Refiner*, the Circuit noted:

> It is also incumbent upon a petitioner objecting to the agency's late submission of documents to indicate with 'reasonable specificity' what portions of the documents it objects to and how it might have responded if given the opportunity.

*Id*.   *See also, Public Service Comm'n of District of Columbia v. F.C.C.*, 906 F. 2d 713, 718 (D.C. Cir. 1990)(agreeing with *Air Transport Association* that plaintiff should have provided whatever additional arguments it would have made).   As noted above, Plaintiff has not demonstrated that he has any specific comment relating to the proposed CMU regulation that would need to be appropriately considered by BOP.

### E.   The Relief Sought May Not Be Granted Without Meeting Specific Requirements of the Prison Litigation Reform Act, 18 U.S.C. §3626(a)(1).

Plaintiff seeks an injunction to prevent the BOP from implementing the CMU regulation and what he refers to as the "terrorist inmate policy."  Amended Complaint, at 14.  The statute governing prospective relief[1] in the Prison Litigation Reform Act (PLRA), codified at 18 U.S.C § 3626(a)(1), puts substantial limitations on the issuance of this type of relief.  Specifically, the Act provides,

> prospective relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in *Porter v. Nussle*, 122 S.Ct. 983 (2002), as "any aspect of prison life") shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means

---

[1]The statute defines prospective relief as "all relief other than compensatory monetary damages."  18 U.S.C. §3626(g)(7).

necessary to correct the violation of the Federal right.

The court must make particularized findings of the federal right violated and the needs-narrowness-intrusiveness requirements under the PLRA.  This mandatory requirement must be more than mimicking the language of the statute, and is discussed in *Cason v. Seckinger*, 231 F.3d 777 (11th Cir. 2000); *see also, Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002).

The statute further states, "The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  18 U.S.C. § 3626(a)(1).  The relief requested by Plaintiff directly affects the operation of the prison system in that Plaintiff is requesting that all "terrorist inmate policies" and the CMU regulation be enjoined.  Such an order will have an adverse impact on the BOP's authority to manage its inmate population and properly allocate the available resources, as well as the operation of the federal prison system.  The court in *Thompson v. Gomez*, 993 F.Supp. 749, 754-5 (N.D.Cal.1997), *rev'd on other grounds* in *Gilmore v. People of the State of California*, 220 F.3d 987, 1005 (9th Cir. 2002) stated:

> The PLRA's prospective relief provisions unambiguously confine the power of federal courts to circumstances where prospective relief is necessary to correct specific violations of federal rights, and then to use only the least intrusive means necessary to correct such federal violations.  For purposes of the PLRA's prospective relief provisions, 'federal rights' are limited to those rights created by federal law.  The legislative reports on the bill reflect these Congressional intentions:
>
> > By requiring courts to grant or approve relief constituting the least intrusive means by curing an actual violation of a federal right, the provision stops judges from imposing remedies intended to effect an overall modernization of local prison systems or provide an overall improvement in prison conditions. The provision limits remedies to those necessary to remedy the proven violation of federal rights. The dictates of the provision are not a departure from current jurisprudence concerning injunctive relief [which provides that] ... injunctive relief must be no broader than necessary to remedy the constitutional violation.'  H.R.Rep. No. 21, 104th Cong., 1st Sess., pt. 2, p. 34 (1995) (citations and quotations

omitted).

On appeal in the same case in the Ninth Circuit, in <u>Gilmore</u>, <u>supra</u>, at 1005, that court observed:

> As the Supreme Court long ago made clear in the school desegregation cases, although the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies ... it is important to remember that judicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults.... As with any equity case, the nature of the violation determines the scope of the remedy. <u>Swann v. Charlotte-Mecklenburg Bd. of Educ.</u>, 402 U.S. 1, 15-16, 91 S.Ct. 1267, 28 L. Ed. 2d 554 (1971) (emphasis added) (approving remedies necessary to effectuate desegregation). Thus where a court seeks to correct a constitutional violation established in the course of litigation, the court's exercise of equitable discretion must heel close to the identified violation and respect 'the interests of state and local authorities in managing their own affairs, consistent with the Constitution.' <u>Milliken v. Bradley</u>, 433 U.S. 267, 281, 97 S. Ct. 2749, 53 L. Ed.2d 745 (1977) ("<u>Milliken II</u> ") (upholding imposition of remedial education program to effectuate desegregation decree).

Based on the forgoing, it would be inappropriate for the court to enjoin the BOP from enacting the regulations regarding the CMU inside the prison system or otherwise following their inmate management policies.  BOP previously estimated that a final rule would be issued by October 2011 but the final rule is still in draft form and must be approved within the agency, by the Department of Justice and by Office of Management and Budget.  No current estimate of the time for issuance is available.  Thus, to issue the most narrowly tailored relief for this particular plaintiff, even if the Court found a violation of the APA, which it should not, the most it should order is for BOP to consider Plaintiff's tardy comments.

> **E.    This Case Should Be Transferred to the District Court for The District of Colorado based on the Convenience of the Parties.**

If this action is not dismissed or decided, the court should transfer this action to the District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a), for the convenience

of the parties and witnesses and in the interest of justice.[2]  *Starnes v. McGuire*, 512 F.2d 918, 927-31 (D.C. Cir. 1974).  The D.C. Circuit in *Starnes* set out a number of factors for a district court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of Columbia.  Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C.  *Id.* at 929-33.

The *Starnes* and the § 1404 (a) factors strongly support the appropriateness of transfer.  Under 28 U.S.C. § 1391(e), which includes the venue provision covering lawsuits against agencies of the United States, a case "may ... be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred..., or (3) the plaintiff resides..."  Plaintiff presumably contends that venue is appropriate in the District Court of Columbia because the defendant is headquartered in the District of Columbia.  However, the events that Plaintiff complains of took place in Florence, Colorado, where Plaintiff is housed.  Thus, venue is more appropriate in Colorado.  At issue is whether Plaintiff is entitled to notice and comment rulemaking under the APA and whether Defendant wrongfully deprived Plaintiff of his alleged right to comment on BOP's proposed CMU regulations.  Plaintiff appears to be challenging actions taken by prison officials in

---

[2]  28 U.S.C. § 1404 (a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Colorado, witnessed by individuals located in Colorado, and allegedly causing injury to plaintiff in Colorado.  Plaintiff's inmate records are located in Colorado.  Various operational aspects of the federal prison in Florence, the institution supplements, and its procedures; and the identity of all those involved in the placement decisions are relevant to the merits of Plaintiff's claim.

Historically, the District of Columbia Circuit and this court have expressly rejected the notion that inmates incarcerated in other jurisdictions can challenge their conditions of confinement in this district simply because it is the location of the Federal Bureau of Prisons (BOP) Central Office.  *Sanders v. Bennett*, 148 F. 2d 19 (D.C. Cir. 1945).  The BOP has approximately 200,000 inmates in more than 100 institutions nationwide.  Courts have correctly recognized the danger of giving all of those inmates the opportunity to bring their claims here. As the District of Columbia Circuit Court has stated, "Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).  Indeed, the District of Columbia Circuit has recognized that "many, if indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate."  *Starnes v. McGuire*, 512 F.2d 918, 926 (D.C. Cir. 1974) (en banc). This is such a case.

## IV.  CONCLUSION

For the foregoing reasons, Defendant respectfully request that the Complaint be dismissed, transferred or judgment granted to Defendant.  A proposed order is attached.

Respectfully submitted,

RONALD C. MACHEN Jr., D.C. BAR No. 447889

United States Attorney

RUDOLPH CONTRERAS , D.C. BAR No. 434122

Chief, Civil Division

_Laurie Weinstein_

LAURIE WEINSTEIN, D.C. Bar # 389511

Assistant United States Attorney

United States Attorneys Office

555 4th St. NW

Washington, DC 20530

Tel: 202-514-7133

Laurie.Weinstein2@usdoj.gov