UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RANDALL TODD ROYER** )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>**FEDERAL BUREAU OF PRISONS** )<br>)<br>    Defendant. )<br>) | Civil No. 10-cv-1196 (RCL) |

## MEMORANDUM OPINION

Defendant Federal Bureau of Prisons ("BOP") moves to dismiss this action, to transfer or, in the alternative for summary judgment. ECF No. 38. Upon consideration of the motion, plaintiff's Opposition [65], BOP's Reply [72], the entire record herein, and the applicable law, the Court will deny BOP's motion.

**I.   BACKGROUND**

Royer is a federal prisoner who has served approximately half of a twenty-year sentence.[1] In this Administrative Procedure Act (APA) challenge, Royer brings two counts. First, he alleges that, in 2006, BOP implemented a "'terrorist inmate' policy" which "amount[ed] to a substantive rule requiring notice-and-comment rulemaking under 5 U.S.C. §§ 553 and 552(a)." Although BOP issued a notice of proposed rulemaking prior to implementing the policy, *see* Limited Communication for Terrorist Inmates, 71 Fed. Reg. 16520 (Apr. 3, 2006), it never finalized the regulations but implemented the policy later that year. Am. Compl. ¶ 9–10. Thus,

---

[1] The acts supporting Royer's conviction are detailed in a Memorandum Opinion also issued this date in *Royer v. Fed. Bureau of Prisons*, No. 10-cv-1996.

Royer argues that BOP has violated APA notice-and-comment requirements. Am. Compl. ¶¶ 26–27.

Royer asserts that the terrorist inmate policy included classification of certain inmates as terrorists, regardless of the crime for which they were convicted; imposing severe restrictions on these inmates' communications; and segregating the inmates from the general prison population by confining them in conditions approximating administrative segregation *or* in newly-created Communication Management Units ("CMUs"). Am. Compl. ¶ 7.[2] Royer alleges that he has been classified as a "terrorist inmate" since December 2006 and housed in various restrictive prison units, including but not limited to the CMUs, since that time. *See* Mem. Op. at 2–3, *Royer v. Fed. Bureau of Prisons*, No. 10-cv-1996.

BOP responds that Royer has failed to state a claim with respect to his first count because its policy is not a substantive rule for which notice and comment is required. For the first time in its Reply, BOP asserts that it could not have implemented a "terrorist inmate policy" without notice and comment because "no such 'terrorist inmate policy' exists." Def.'s Reply 1. In the alternative, BOP argues that Royer's claim is moot because the agency issued a Notice of Proposed Rulemaking regarding the CMUs on April 6, 2010. Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss, Transfer or, in the Alternative, for Summ. J. 2, ECF No. 38 [hereinafter Def.'s Mem.].

Royer's second count alleges that, when BOP finally issued a proposed rule addressing the CMUs in 2010, it failed to inform Royer and other inmates of the opportunity to comment on

---

[2] At least two other lawsuits have challenged BOP's failure to engage in notice-and-comment rulemaking, but have not reached the merits of the claims. *See* Order, *Benkahla v. Fed. Bureau of Prisons*, No. 09-cv-25 (S.D. Ind. July 29, 2010) (dismissing case without prejudice after plaintiff Benkahla voluntarily moved to dismiss); *Aref v. Holder*, 774 F. Supp. 2d 147, 171 (D.D.C. 2011) (finding plaintiffs' APA claim moot because BOP resumed the rulemaking process in 2010 and dismissing the claim without prejudice to refile so that plaintiffs could renew the claim if defendants again abandoned the rulemaking process).

the proposed rule, thus depriving them of the right to participate in agency rulemaking. *Id.* ¶ 29 (citing 5 U.S.C. § 553(c)). BOP seeks summary judgment on this count, arguing that it notified inmates of the rulemaking, that it was not required to individually notify potentially interested parties, and that Royer actually received notice from an outside source.[3] Def.'s Mem. 3. BOP also argues that Royer has failed to allege any injury because he not specified the content of his comments. *Id.* at 10.

Finally, BOP argues that the case should be transferred to the District of Colorado because it "directly involves only actions occurring in the state of Colorado, at the Florence ADX" facility where Royer was housed when the 2010 proposed rule was published. *Id.*

For both counts, Royer seeks declarative and injunctive relief and an award of costs.[4] BOP argues that any relief must comply with the requirements of the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(a)(1), and that "the most [the Court] should order is for BOP to consider Plaintiff's tardy comments." Def.'s Mem. 11–13. This argument is premature given the status of this case and the Court will not consider it now.

## II.    ANALYSIS

### A.    Royer's Challenge to BOP's Failure to Engage in Notice-and-Comment Rulemaking Survives Motion to Dismiss

#### 1.    *Legal Standard:  Motion to Dismiss*

---

[3] At one point, BOP argues that Royer's second claim should be dismissed for failure to state a claim because, "by Plaintiff's own admission, he did in fact have an opportunity to comment." Def.'s Mem. 3. However, BOP's actual argument is limited to an argument that summary judgment is appropriate and this is reinforced by BOP's Reply. *Id.* at 8–9; Def.'s Reply 4. Thus, the Court will consider only the argument for summary judgment.

[4] Specifically, he asks the Court to declare that BOP violated the APA by implementing its terrorist inmate policy without notice-and-comment rulemaking and by denying inmates the ability to comment on the proposed rule; to order BOP to engage in notice-and-comment rulemaking with respect to the terrorist inmate policy and to "comply with the published regulations its 'terrorist inmate' policy modifies, detracts from, or violates"; to permanently enjoin the BOP from implementing its 'terrorist inmate' policy and from taking any further action on the CMU regulations, including publication of a final rule, until Royer and other inmates receive notice of, and opportunity to submit comments on the rule. Am. Compl. 13–15.

The Federal Rules of Civil Procedure Rule require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require "'detailed factual allegations,' but requires more than 'labels and conclusions'" or "'naked assertion[s].'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations, although assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court need not accept legal conclusions cast as factual allegations. *Iqbal*, 556 U.S. at 678.

With respect to *pro se* plaintiffs, a complaint is "'to be liberally construed' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *cf.* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

### 2. Legal Standard: Administrative Procedure Act

The APA defines a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . . ," 5 U.S.C. § 551(4), and requires agencies to provide notice and an opportunity to comment before adopting a rule. *Id.* § 553(b)–(c). However, the notice-and-comment requirement does not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(3). Although the APA requires that

agencies *publish* interpretive rules and statements of policy in the Federal Register, 5 U.S.C. § 552(a)(1)(D), if a person has "actual and timely notice of the terms thereof," there is no associated penalty on the agency. *Id.* § 552(a)(1).

Distinguishing between substantive rules and statements of policy, guidance documents and interpretive rules "is often a very difficult and confusing task." *Iyengar v. Barnhart*, 233 F. Supp. 2d 5, 14 (2002) (citing several D.C. Circuit cases). Our Circuit has stated:

> The distinction between legislative rules and interpretative rules or policy statements has been described at various times as 'tenuous,' 'fuzzy,' 'blurred,' and, perhaps most picturesquely, 'enshrouded in considerable smog.' . . . '[T]he problem is baffling.' By virtue of Congress' silence with respect to this matter, it has fallen to the courts to discern the line through the painstaking exercise of, hopefully, sound judgment.

*Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 946 (D.C. Cir. 1987) (internal citations omitted).

To determine whether a rule is interpretive or whether it instead must comply with notice-and-comment requirements, the our Circuit has framed the key question as "whether the purported interpretive rule has 'legal effect' . . . ." *Am. Min. Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993). If a court can answer any of the following questions in the affirmative, the rule is a legislative rule requiring notice-and-comment rulemaking, not an interpretive rule:

> (1) [W]hether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule.

*Id.*

Elsewhere, the Circuit has reasserted that "an agency's ability to escape notice and comment by issuing interpretive rules is limited where the rule at issue changes an existing regulatory interpretation." *Id.* It would undermine the APA to "allow an agency to make a

5

fundamental change in its interpretation of a substantive regulation without notice and comment." *Paralyzed Veterans of Am. V. D.C. Arena L.P.*, 117 F.3d 579, 586–87 (D.C. Cir. 1997); *cf.* 5 U.S.C. § 551(5) (defining "rulemaking" to include "amending" an existing rule).

### 3. *BOP's Arguments for Dismissal*

BOP argues that the "alleged 'terrorist policy' has not been shown to be a 'rule'" and that the policy is "more akin to interpretive rules or agency policy statements . . . ." Def.'s Mem. 6. BOP does not provide the Court with any of the documents implementing the policy or state definitively whether they believe it to be a policy statement or an interpretive rule.

BOP argues that it has "clear legislative authority" to implement terrorist inmate policies. Def.'s Mem. 7 (citing 18 U.S.C. § 4001(b)(1) ("[T]he control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General . . . .")). BOP notes that it is authorized to designate the *place* of an inmate's confinement, 18 U.S.C. § 3621(a)–(b); charged with determining the proper security classification for prisoners based on the nature of their offenses, *id.* § 4081; and has regulatory authority to implement policies to protect security, discipline, and good order, 28 C.F.R. §§ 540.12(a), 540.14(b)–(c), 540.40, 540.102. Thus, BOP argues, it "did not need to issue a legislative rule to establish the policies governing 'terrorist inmates' because it already had the legislative and regulatory authority to do so." Def.'s Mem. 8.

BOP also argues that the terrorist inmate policy does not satisfy any of the three remaining tests for whether a rule is legislative. Namely, the agency did not publish the rule in the Code of Federal Regulations, the agency did not explicitly invoke its general legislative authority, and the rule did not effectively amend a prior legislative rule. *Id.*

Finally, BOP argues the claim is moot because it has now engaged in notice-and-comment rulemaking.

*4.      Royer's Response*

Royer responds that the terrorist inmate policy must be promulgated pursuant to notice-and-comment requirements because it effectively amends a prior legislative rule. Pl.'s Mem. 5–8. Royer points to a number of aspects of the policy that distinguish it from current rules. First, "existing published rules do not permit indefinite confinement in administrative segregation without a hearing," whereas the terrorist inmate policy requires indefinite segregation without meaningful hearings. *See* Am. Compl. ¶ 19; *see also* 28 C.F.R. § 541.26 (providing for hearings to review segregated housing status). Similarly, Royer argues that the terrorist inmate policy allows BOP to impose restrictions "equal to or more severe than those imposed under Special Administrative Measures ('SAMS'), and of longer duration, but without the procedural safeguards provided for by the published SAMS regulations." Pl.'s Mem. 7 (citing Am. Compl. ¶ 22; 28 C.F.R. § 501.3). Next, he notes that the terrorist inmate policy limits contact visits so that BOP can monitor the visits, and not because the contact might jeopardize the security of the institution as under existing rules. *See* Am. Compl. ¶ 20; *see also* 28 C.F.R. § 540.51(h)(2) (providing for contact visits). Finally, he argues that the terrorist inmate policy "categorically disallows" personal interviews of terrorist inmates by the media, whereas existing regulations only prohibit these if they would endanger the interviewer or cause a disturbance in the institution. *See* Am. Compl. ¶ 21; *see also* 28 C.F.R. § 540.63.

Royer suggests that BOP's arguments are belied by the fact that BOP promulgated a notice of proposed rulemaking outlining the same or similar policies in April 2006. The 2006 NPRM noted that the "proposed regulations *would give [BOP] authority* for imposing limits and restrictions on the communications of inmates in the [BOP's] custody . . . ." Pl.'s Mem. 9 (quoting 71 Fed. Reg. at 16,521 (emphasis added)). That NPRM also stated that "this regulation

will be applied differently from regulations in 28 CFR part 501, which authorize the Attorney General to impose special administrative measures (SAMs)" because communication limits could be imposed "based solely on information from internal [BOP] sources," rather than from the FBI and U.S. Attorney's Office. 71 Fed. Reg. at 16,521.

With respect to the mootness argument, Royer notes that the 2010 proposed rule is not coterminous with the policy he alleges must be subject to notice-and-comment rulemaking. The 2010 proposed rule addresses only those inmates housed in CMUs. Royer challenges a policy that affects all "terrorist inmates," regardless of whether they are housed in CMUs. Pl.'s Mem. in Support of Opp'n to Def.'s Mot. to Dismiss, Transfer, or for Summ. J. 3, ECF No. 65 [hereinafter Pl.'s Mem.]; Pl.'s Am. Compl. ¶ 12 (stating that BOP may also house "terrorist inmates" in other institutions' Special Housing Units ("SHUs") under heightened restrictions relative to other SHU inmates, in the Special Management Unit ("SMU") gang program, and at the supermax prison in Florence, Colorado).

### 5.   *BOP Has Not Shown that Notice and Comment Not Required*

At this stage, the Court cannot conclude that notice-and-comment rulemaking was not required. Neither party has fully fleshed out the contours of the policy by providing documents outlining the policy or an exact description of the restrictions imposed. Moreover, as Royer points out, the "'label [BOP] places on a rule is not dispositive.'" Pl.'s Mem. 9 (quoting *Truckers United for Safety v. Fed. Highway Admin.*, 139 F.3d 934, 939 (D.C. Cir. 1998)).

At this juncture, Royer has stated enough facts which, accepted as true, suggest that BOP's terrorist inmate policy effectively amends existing rules. The regulatory provisions cited by BOP as evidence of their existing authority do not convince the Court otherwise. Those provisions merely authorize or require the warden of each institution to "establish procedures

that enable monitoring of telephone calls," 28 C.F.R. § 540.102, "restrict inmate visiting when necessary to ensure the security and good order of the institution," *id.* § 540.40, "reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution . . . ," *id.* § 540.14, and "establish and exercise controls to protect individuals, and the security, discipline, and good order of the institution," *id.* § 540.12. By contrast, Royer alleges that BOP has implemented an agency-wide policy by which inmates are classified and that the restrictions on these inmates are more severe or include fewer procedural protections than those than allowed under current regulations.

That BOP has now promulgated two draft rules to implement similar provisions supports the conclusion that the policy is a substantive rule to which the notice-and-comment requirements apply.

The Court is perplexed by BOP's new contention that no terrorist inmate policy exists. Def.'s Reply 1. The declaration BOP cites in support of this statement states only that "BOP does not have a policy statement entitled "terrorist inmate policy." The Court hopes that BOP is not splitting hairs in its filing by arguing literally that no paper exists with the heading "Terrorist Inmate Policy." In Royer's related case, the Agency has acknowledged that it "has identified [Royer] as an offender with a history of/or nexus to international terrorism." *See* Decl. of David Schiavone, *Royer v. Fed. Bureau of Prisons*, No. 11-1996 (D.D.C. June 1, 2012), ECF No. 91-1. As the Court reads BOP's filings, they have never, until now, denied that they classify inmates with a nexus to terrorism and house those inmates in more restrictive settings than the general population. Until BOP elaborates further on its contention that no "terrorist inmate policy" exists, the Court cannot consider this argument given BOP's previous representations.

Moreover, the Court cannot conclude that Royer's claim is moot at this time. BOP suggests that because it has not promulgated a draft CMU regulation, any error in failing to previously comply with notice-and-comment requirements is moot. However, the draft CMU regulation does not appear to be coterminous with the policy Royer challenges (namely, classifying inmates as terrorists and housing them in various restrictive units including, *but not limited to*, the CMUs).

What's more, although BOP promulgated a proposed rule in April 2010, it has been nearly three years since that proposed rule and BOP has given the Court no indication of when or whether it intends to finalize the rule. It is true that "'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them,'" *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). However, "a defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case," *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 174 (U.S. 2000), unless it is clear that the conduct will not resume. *See also Conservation Law Found. v. Evans*, 360 F.3d 21, 27 (1st Cir. 2004) (applying doctrine in context of requirement for notice and comment). There is a "'heavy burden'" on the party asserting mootness to show that the conduct will not recur. *DeFunis*, 416 U.S. at 349 (Brennan, J., Dissenting) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). Thus, BOP's mootness argument fails unless it can show it will finalize the rule.

    **B.**     **Royer's Challenge to BOP's Failure to Provide Inmates Opportunity to Participate in Notice-and-Comment Rulemaking Survives**

        *1.*     *Legal Standard: Motion for Summary Judgment*

Summary judgment should be granted when "the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a) (emphasis added); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material if it could affect the outcome of the case. *Id.* A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The non-movant, however, must establish more than "the existence of a scintilla of evidence" in support of his position, *id.* at 252, and may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999).

### 2.     *Timely Provision of Opportunity to Comment*

BOP argues that it is entitled to summary judgment on Royer's second count because notice of the proposed CMU rule was timely provided to inmates in the Florence ADX, where Royer was housed at the time of the rulemaking, and thus that Royer had an opportunity to comment. Def.'s Mem. 9 (citing Decl. of Roxana Mack, ECF No. 38-1 [hereinafter Mack Decl.]). Specifically, BOP asserts that ADX inmates had televisions in their cells and that, "on April 6, 2010, the ADX posted the 'New Rules Posting List' on the inmate bulletin (accessible via an inmate's television in his cell) which included the proposed [CMU] regulation . . . ." *Id.* at 9–10 (citing Mack Decl. ¶¶ 3–6). Royer could then seek a copy of the proposed rule from the prison. *Id.* at 10. BOP also argues that Royer received *actual* notice of the rule, and a copy thereof, from an outside contact days before expiration of the comment period. Def.'s Reply 3.

Royer argues that failing to notify inmates of the ability to comment violates 5 U.S.C. § 553(c) which requires an agency to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments . . . ." He asserts that notice of the 2010 proposed rulemaking was not posted at ADX until after the comment period had expired. Am. Compl. ¶ 17; Pl.'s Opp'n 11 (citing Decl. of Randall Todd Royer ¶¶ 5–9, ECF

11

No. 65 [hereinafter Royer Decl.]; Decl. of Terry L. Nichols ¶ 3, ECF No. 65). Royer's filings supports this assertion. *See* ECF No. 8 at 15, 17 (referring to a communication from Royer to Roxana Mack, the Assistant Supervisor of Education at ADX Florence asserting that, as of June 3, 2010, four days before comments were due, the proposed rule was not posted on the bulletin).

As a preliminary matter, BOP does not dispute that it must notify inmates of proposed regulations. *See* Def.'s Mem. 3 (arguing only that "nothing in the APA or other law requires the BOP to *individually* notify potentially interested parties once they have published the proposed rule"). The Court is not aware of legal authority directly addressing this issue. However, the APA would appear to require *some* notice to inmates of proposed rules affecting them. The Act requires that "[g]eneral notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law." 5 U.S.C. § 553(b). Although this provision says nothing about individuals who lack access to the Federal Register because the government has placed them in restrictive confinement, the law requires that "[a]fter notice required by this section, the agency *shall give* interested persons *an opportunity to participate* in the rule making through submission of . . . views, or arguments . . . ." *Id.* § 553(c) (emphasis added).

The prisoners directly affected by a regulation are clearly "interested persons." Logically, in order to fulfill the statute's command that BOP give them "an opportunity to participate," it appears that BOP would have to notify inmates they have placed in restrictive confinement of the promulgation of draft regulations that directly impact them.

Because BOP has not provided the Court with legal authority to the contrary and because they have not denied that they must notify prisoners of the existence of relevant proposed rules, the Court will assume for purposes of this motion that BOP was required to notify prisoners of

the 2010 rulemaking. Royer's declaration is sufficient to show that there is a genuine dispute as to whether he had such notice. Thus, summary judgment on this point would be inappropriate, particularly where, as here, BOP has not filed an answer and no discovery has been conducted.

BOP argues that, even if notice was required and BOP failed to provide it, Royer has admitted that, he received notice and a copy of the rule from "a contact in the community" in the week preceding the comment deadline. Royer Decl. ¶ 26. BOP argues that Royer "does not explain why he needed additional time" to comment. Def.'s Mem. 3.

However, other APA provisions suggest that a requirement for *timely* notification may be implicit in the requirement for notice and an opportunity to comment. For example, with respect to the requirement that agencies publish in the Federal Register "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency," the APA provides that "[e]xcept to the extent that a person has actual *and timely* notice of the terms thereof, a person may not in any manner be . . . adversely affected by[] a matter required to be published in the Federal Register and not so published." 5 U.S.C.A. § 552(a)(1). Similarly, the "required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except . . . ." 5 U.S.C. § 553(d).

Moreover, to the extent that BOP was required to give prisoners an opportunity to comment, this opportunity would only be effective if notice was "timely" and provided the prisoner a genuine opportunity to research the rule and draft comments.

Royer provides a declaration that, although he received notice of the proposed rule during the week prior to the comment deadline, this "was insufficient time for [him] to properly

research and draft comments . . . ." Royer Decl. ¶ 4. This is sufficient to create a genuine dispute as to whether Royer had timely notice of the regulation.

Given the foregoing, summary judgment on this count is not now appropriate.

### 3. *Allegation of Injury*

BOP argues that Royer has not specified the comments he would make in response to the proposed rule and that thus, cannot show injury. Def.'s Mem. 10. BOP does not specify whether it is seeking dismissal or summary judgment on this point, however, given the status of the litigation, the Court will assume BOP seeks dismissal for failure to state a claim. Additionally, the Agency's argument appears to be that any error on BOP's part is "harmless," and not that Royer lacks standing.

BOP points to several cases suggesting that plaintiffs must set forth the comments they intend to make in order to challenge procedural irregularities in rulemaking. Def.'s Mem. 10–11 (citing *Air Transport Ass'n of Am. v. Civil Aeronautics Bd.*, 732 F.2d 219 (D.C. Cir. 1984); *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 540–41 (D.C. Cir. 1983); *Pub. Serv. Comm'n of the Dist. of Columbia v. FCC*, 906 F.2d 713, 718 (D.C. Cir. 1990)). However, as Royer points out, these cases dealt with situations in which an agency provided at least some notice of the proposed rule, but where plaintiffs challenged the agency's failure to provide additional studies relevant to the rule or to sufficiently detail the purposes of the rule. The D.C. Circuit has distinguished these cases:

> [T]hese decisions put that burden on the challenger [to show that irregularities caused 'specific prejudice] where the agency merely failed to provide proper access to some *supplemental* study or studies that partially undergirded its rule. Without deprecating the importance of such studies (or of such disclosure failures), we think imposition of such a burden on the challenger is normally inappropriate where the agency has completely failed to comply with § 553. Even if the challenger presents no bases for invalidating the rule on substantive

>grounds, we cannot say with certainty whether petitioner's comments would have had some effect if they had been considered when the issue was open.

*McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1323-24 (D.C. Cir. 1988)

Assuming for the sake of argument, however, that Royer must allege the specific content of his proposed comments, he has done so. First, Royer is proceding *pro se* and his complaint is to be "liberally construed." His related complaint details his objections to the terrorist inmate policy generally and he states that his comments to the rule would mirror those. *See* Compl., *Royer v. Fed. Bureau of Prisons*, No. 10-cv-1996 (D.D.C. Feb. 7, 2010); Pl.'s Mem. 14. (stating that he would argue that the CMUs, "as described, would violate inmates' due process rights, their First Amendment right to communicate with their families, and their Eighth Amendment right to freedom from cruel and unusual punishment" and that BOP has failed to show a need for these restrictions). Thus, BOP cannot claim that it is unaware of his objections to the terrorist inmate policy. Finally, none of the cases cited by BOP suggest that a plaintiff must specify the content of his proposed comments *in his complaint*. Rather, they focus on the plaintiff's burden simply to detail the content of their comments during litigation.

In sum, dismissal of Royer's complaint for failure to specifically allege the contents of his comments would be inappropriate.

### C. Motion to Transfer Denied

#### 1. *Legal Standard*

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting

*Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also In re Whittman*, 2001 WL 238171, at *1 (D.C. Cir. Feb. 14, 2001) (per curiam) (holding that the "court's conclusion that transfer was appropriate is to be accorded great deference"). The party seeking transfer "bears the burden of establishing that the transfer of [the] action is proper." *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).

The D.C. Circuit has outlined a number of factors that district courts should consider when determining whether to transfer a civil case brought by a prisoner incarcerated outside of the District of Columbia. *See Starnes v. McGuire*, 512 F.2d 918, 927–31 (D.C. Cir. 1974). These include: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C. *Id.* at 929–33.

Courts should also balance the "convenience of the parties and witnesses" and the "interests of justice." 28 U.S.C. § 1404(a). Under the "convenience" factor, courts consider several "private" interests including: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; and (4) the convenience of the witnesses and other sources of proof. *See Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 46 (D.D.C. 2006); *Trout Unlimited v. USDA*, 944 F. Supp. 13, 16 (D.D.C. 1996). Under the "interest of justice" factor, courts consider several "public" interests including: (1) the desire to avoid multiplicity of litigation as a result of a single transaction or event; (2) the local interest in deciding local controversies at home; and (3) the relative familiarity of both venues with the governing laws. *See Hawksbill Sea Turtle (Eretmochelys Imbricata) v. FEMA*, 939 F.Supp. 1, 4 (D.D.C. 1996) (listing the first and second interests); *see also Reiffin v. Microsoft Corp.*, 104 F.

Supp. 2d 48, 56 (D.D.C. 2000) ("The interests of justice are better served when a case is transferred to the district where related actions are pending.").

### *2. Transfer Would Not Be Appropriate*

BOP moves to transfer the case to the District of Colorado because "the events that Plaintiff complains of took place in Florence, Colorado, where Plaintiff is housed." Def.'s Mem. 14. BOP asserts that witnesses and evidence of the posting or non-posting of proposals are located in Colorado, injury was caused in Colorado, and "[v]arious operational aspects of the federal prison in [Colorado], the institution supplements, and its procedures; and the identity of those involved in the placement decisions are relevant to the merits of Plaintiff's claim." *Id.* at 15.

For a number of reasons, the Court finds BOP's arguments unpersuasive. Royer has no difficulty communicating with counsel because he is pro se. There is no need for Royer to be present for any proceedings at this time and thus he does not need to be transferred. Moreover, Royer is no longer housed in Colorado so neither he nor his records are located at this facility.

Additionally, issues of national policy or decisions made by national officials are relevant in this case. BOP's violation of required notice-and-comment rulemaking is related to decisions likely made by individuals at BOP's headquarters in Washington, D.C. *See Farmer v. Hawke*, 1996 U.S. LEXIS 1630 (D.D.C. Sept. 5, 1996) (denying motion to transfer where plaintiff challenged BOP policy developed in Washington, D.C. and applied nationwide). Further, Royer contends that the decision not to share the proposed rule with inmates was made by the BOP's Rules Unit in the Office of General Counsel in Washington, D.C. Pl.'s Mem. 19.

Further, this Court is considering a related case filed by Royer and the facts and law in that case are relevant to the case at hand. Finally, the plaintiff's choice of forum is relevant in a motion to transfer analysis and Royer has chosen to file suit in the District of Columbia.

Although some evidence and at least one witness may be located in Colorado, this hardly outweighs the many reasons above for hearing the case in this District.

Given all of the above, the motion to transfer will be denied.

### III. CONCLUSION

For the foregoing reasons, the Court will DENY WITHOUT PREJUDICE BOP's motion to dismiss Royer's first count. BOP has not demonstrated that notice and comment was unnecessary. Additionally, the Court cannot conclude that Royer's is moot because, at this stage, he has asserted enough facts to suggest that the challenged policy and the proposed rule are not coterminous. Moreover, BOP has given no indication of when they intend to finalize the 2010 proposed rule.

BOP's motion to dismiss or for summary judgment with respect to Royer's second count also fails and the Court will DENY it WITHOUT PREJUDICE. BOP does not dispute that it must provide notice of proposed rulemakings to inmates generally. There is a dispute of fact regarding whether they did this and whether Royer had timely notice of the 2010 rulemaking. Moreover, Royer has sufficiently alleged the comments he would make in response to the proposed rule.

Finally, transfer to the District of Colorado would be inappropriate. That motion is DENIED.

An Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 28, 2013.